### THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| David Gordon Oppenheimer,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>First Step Trademarks, LLC and Alexander C.<br>Dulac,<br><br>　　　　　　　　Defendants. | Case No. 1:21-cv-02961<br><br>Dist. Judge Andrea R. Wood<br><br>Mag. Judge Jeffrey T. Gilbert |

### PLAINTIFF DAVID GORDON OPPENHEIMER'S RESPONSE TO DEFENDANT ALEXANDER C. DULAC'S MOTION TO EXTEND AUTOMATIC STAY

Plaintiff David Gordon Oppenheimer ("Oppenheimer" or "Plaintiff") respectfully submits this response ("Response") to Defendant Alexander C. Dulac's ("Dulac") motions to dismiss Defendant First Step Trademarks, LLC ("FST" and, together with Dulac, "Defendants") based on a discharge injunction issued in FST's bankruptcy case [Dkt. 42] ("FST's Motion") and Dulac individually as a result of the discharge injunction [Dkt. 53] ("Dulac's Motion" and, together with FST's Motion, "Motions").

### RELEVANT PROCEDURAL BACKGROUND

Oppenheimer initiated this litigation on June 2, 2021, asserting claims against both Defendants. Specifically, Oppenheimer asserted claims for copyright infringement and violations of Section 1202 of the Digital Millennium Copyright Act ("DMCA") against both Defendants, while also pleading claims for vicarious copyright infringement and contributory copyright infringement in the alternative against Dulac individually.

On December 31, 2021, FST filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"), Case No. 1:21-BK-12147 ("FST's Bankruptcy Case"). Upon receiving

notice of FST's Bankruptcy Case on or around February 7, 2022, both Oppenheimer and Oppenheimer's counsel Ilya Zlatkin ("Zlatkin") did not take further action against FST as a result of the automatic stay stemming from FST's Bankruptcy Case. To Zlatkin's and Oppenheimer's knowledge, Dulac has not declared bankruptcy in his personal capacity, nor has Dulac personally moved for relief with the Bankruptcy Court with respect to this action.

On February 16, 2022, Dulac filed a motion to extend the automatic stay to Dulac. [Dkt. 17]. After full briefing by the parties, the Court declined to extend the automatic stay to Dulac. [Dkt. 21]. The ruling denying Dulac's motion was the last proceeding in this case until October 6, 2022, when the case was reassigned from Judge Norgle to Judge Wood. On January 23, 2023, this case was referred to Magistrate Judge Gilbert for the purpose of holding proceedings related to a settlement conference and discovery supervision. [Dkt. 30]. On February 1, 2023, Judge Gilbert issued a minute entry order setting a schedule with respect to discovery. Meanwhile, in FST's Bankruptcy Case, on February 7, 2023, the Bankruptcy Court issued its confirmation order [FST's Bankruptcy Case, Dkt. 72] ("Confirmation Order") confirming FST's Amended Plan of Reorganization, as revised [FST's Bankruptcy Case, Dkt. 58] ("Amended Plan" or "Plan"). The Confirmation Order and the Amended Plan made clear that Oppenheimer was prohibited from taking any action "against the assets of [FST]."

Oppenheimer and Dulac continued litigating this case, with Dulac filing various motions and Oppenheimer responding thereto. These included FST's Motion, which Dulac filed on March 30, 2023. Though FST was an unrepresented business entity, the Court took FST's Motion, the Confirmation Order, and the Amended Plan under advisement. [Dkt. 51].

In large part as a byproduct of FST's Bankruptcy Case and Oppenheimer's deference to Dulac's requests for extensions of time, the parties did not meet certain deadlines set by Judge

Gilbert's scheduling order. As Judge Gilbert's minute entry order of April 18, 2023, made clear, however, the parties were obligated to serve initial disclosures and written discovery requests by April 24, 2023, lest they be deemed "in default and in contempt of the case management order." [Dkt. 43]. As a result, Zlatkin proceeded to serve Dulac with initial disclosures on April 19, 2023, indicating in the disclosures that they were also being served to FST.

In response to this service of initial disclosures, Zlatkin was contacted by Ilana Volkov, FST's attorney in FST's Bankruptcy Case. Specifically, Volkov forwarded the Confirmation Order and the Amended Plan to Zlatkin, threatening to file a complaint against Zlatkin and Oppenheimer with the Bankruptcy Court for violation of the discharge injunction. (*See* Dkt. 57-2.) In response, Zlatkin explained to Volkov that Oppenheimer was no longer seeking monetary damages from FST, but that Oppenheimer was not otherwise obligated to drop his case against FST. (*See id.*) Zlatkin provided Seventh Circuit case law to support Oppenheimer's position and in a subsequent email invited Volkov to provide any case law to the contrary. Volkov did not respond to Zlatkin's email of April 21, 2023. (*See id.*) Zlatkin then proceeded to serve Dulac with Oppenheimer's written discovery requests on April 24, 2023, in accordance with Judge Gilbert's order. The written discovery requests were directed solely to Dulac, though Zlatkin copied Volkov on the email solely for the sake of transparency. (Of note, the written discovery requests that Dulac sent to Zlatkin on April 25, 2023, listed both Dulac and FST as the parties issuing the requests.)

While FST remains a party to this case, other than "serving FST" with initial disclosures by virtue of sending documents to Dulac, neither Oppenheimer nor Zlatkin have taken any action in this litigation that directly implicates FST since learning of FST's Bankruptcy Case. All of Oppenheimer's and Zlatkin's actions have been directed to Dulac in his individual capacity. Dulac has proceeded to file Dulac's Motion on July 27, 2023, seeking to leverage FST's Bankruptcy

Case into a dismissal of Oppenheimer's claims against Dulac (a non-debtor) in his individual capacity.

<u>**ARGUMENT**</u>

### I.    FST'S MOTION TO DISMISS SHOULD BE DENIED

Contrary to FST's and Dulac's assertions, the discharge injunction from FST's Bankruptcy Case does not require dismissal of FST from this case. Specifically, the discharge injunction portion of the Amended Plan reads as follows:

> Effective on the Effective Date, all creditors who have held, hold, or may hold Claims against the Debtor or its assets are enjoined from taking any of the following **actions against the assets of the Debtor** with respect to such Claims (other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order): (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtor or the assets of the Debtor; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against the Debtor or its assets; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor or the assets of the Debtor; (iv) asserting any set-off, right of subrogation or recoupment of any kind directly or indirectly against any obligation due the Debtor or its assets; and (v) proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan.

(Amended Plan, at 18 (emphasis added).) Oppenheimer does not dispute that he is a creditor who has a "Claim" (as defined in the Amended Plan) against FST. It is important to note that in various places, the injunction explicitly states "against the Debtor or its assets" whereas in stating the general type of actions that are prohibited, the Amended Plan does not prohibit actions against the Debtor. Instead, the language preceding the enumerated list states that only "actions against the assets of the Debtor" are enjoined. When language in a legal document is included in some but not all instances, it is assumed that the omission is purposeful. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("It is a basic rule of statutory construction that where a word or phrase is used in one provision, but absent from another, the absence of language typically is intentional.") (citations

omitted); *Novartis Pharma AG v. Amgen Inc.*, 19-cv-2993 (PKC), at *7-8 (S.D.N.Y. June 9, 2020) ("Courts will give effect to the contract's language and the parties must live with the consequences of their agreement. . . [I]f parties to a contract omit terms - particularly, terms that are readily found in other, similar contracts - the inescapable conclusion is that the parties intended the omission.") (internal citations and quotation marks omitted). This introductory language applies to and modifies all of the prohibited types of activities in the list that follows, because "[u]nder the series-qualifier canon, 'a modifier at the beginning or end of a series of terms modifies all the terms.'" (quoting *United States v. Laraneta*, 700 F.3d 983, 989 (7th Cir. 2012)).

Regardless, even if it is ultimately determined that Oppenheimer cannot "continue this case" against FST (and not just against FST's assets), that is not the same as obligating Oppenheimer or the Court to *dismiss* FST from this case. Practically speaking, Oppenheimer has not continued this case against FST since finding out about FST's initiation of FST's Bankruptcy Case. The only action that can even remotely be claimed that Oppenheimer has done with respect to FST is Zlatkin's forwarding of Oppenheimer's initial disclosures to Dulac, naming FST as a recipient of the disclosures, pursuant to Judge Gilbert's order obligating the parties to do so. Otherwise, FST has remained nominally a defendant in this case, without any action against it by Oppenheimer.

Similarly, even if Oppenheimer is prohibited from "enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against [FST] or its assets," that does not encompass an obligation for either Oppenheimer or the Court to dismiss FST from this case. As Zlatkin has indicated in open court, the intention of keeping FST in this case in large part surrounds Dulac's pending motion to dismiss for lack of personal jurisdiction. (*See* Transcript of Proceedings from

5

April 26, 2023, at 4–5.) Considering that Dulac was the one who filed the personal jurisdiction motion to dismiss, the Court's determination that it can assert personal jurisdiction against FST (as a prerequisite for asserting jurisdiction against Dulac) is not a decree or order against FST or FST's assets. Consequently, while Oppenheimer certainly cannot recover monetary damages from FST as a result of this action, and even if Oppenheimer cannot "continue this case" against FST (as opposed to just FST's assets), <u>FST is not entitled to *dismissal*</u> from this case under the Plan.

## II.    DULAC'S MOTION TO DISMISS SHOULD BE DENIED.

Dulac's main argument boils down to a position that, because FST has been discharged in bankruptcy, the benefits of the discharge should be extended to FST's founder, who is not a debtor in FST's Bankruptcy Case. That was wrong as a matter of law when Dulac first attempted to extend the automatic stay, and it is similarly wrong now with respect to the bankruptcy discharge. "Although [the] automatic stay provision prevents on-going litigation against a debtor, the general rule in this circuit is that plaintiffs are free to pursue the debtor's codefendants regardless of the automatic stay." *Celtic Bank Corp. v. Exec. Title, Inc.*, No. 15 CV 30, 2015 WL 5951844, at *2 (N.D. Ill. Oct. 13, 2015) (internal quotations omitted). Only "unusual circumstances" might merit a departure from this rule, and the required circumstances are unusual enough that in the three-plus decades since that doctrine was developed in *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986), the Seventh Circuit has not found them to exist even once. *Edelson PC v. Girardi*, Case No. 20-CV-7115, at *31 (N.D. Ill. July 19, 2021); *see also*, *Harley-Davidson Credit Corp. v. JHD Holdings Inc.*, No. 19-CV-155-JDP, at *2 (W.D. Wis. Dec. 3, 2020) (declining to decide whether *A.H. Robins* is controlling in the Seventh Circuit).

Even if it is possible in theory for a non-debtor to take advantage of the bankruptcy stay and discharge, Dulac cannot do so here. As a threshold matter, insofar as the determination of

liability is concerned, Oppenheimer's claims against Dulac do not require piercing FST's corporate veil. This case also does not present the unusual circumstances that would justify any court extending bankruptcy protections to a non-debtor. Finally, and most importantly, the limitation of liability section of the Amended Plan does not exempt Dulac from Oppenheimer's claims. There is no basis for relieving Dulac from this action just because he chose to cause one of his companies to declare voluntary bankruptcy, rather than doing so on his own personal behalf.

### A. No Veil Piercing Is Required for Oppenheimer's Claims Against Dulac.

Both Dulac and FST's attorney have claimed that Oppenheimer's claims against Dulac are prohibited under bankruptcy laws, because Oppenheimer is trying to pierce the corporate veil. That is not true. Oppenheimer's claims against Dulac would exist regardless of whether FST was even a defendant in this case. Oppenheimer has alleged two claims against FST – copyright infringement and violation of the DMCA. Those claims also list Dulac as a co-defendant in his personal capacity, and if Oppenheimer succeeds in that portion of the case, Dulac would be found jointly and severally liable for those claims. The discharge under FST's bankruptcy proceedings would not affect Dulac's personal liability on those claims. *See* 11 U.S.C. § 524(e).

Even setting the direct copyright infringement and direct DMCA violations aside, Dulac ignores that Oppenheimer pleaded other claims against Dulac individually – specifically, claims in the alternative for contributory copyright infringement and vicarious copyright infringement. Both of those secondary infringement claims require the existence of direct copyright infringement by any third party. *Denison v. Larkin,* 64 F. Supp. 3d 1127, 1135–36 (N.D. Ill. 2014) (citing cases). It just so happens that the third party in this case is FST. Similarly, Dulac can be found to be secondarily liable for DMCA violations committed by FST. *See In re Dealer Mgmt. Sys. Antitrust Litig.*, No. 18-cv-864, at *27 (N.D. Ill. Sep. 3, 2019) (noting that courts "have applied secondary liability principles drawn from copyright law to claims brought under the DMCA.") (citing cases).

FST's liability for direct infringement and DMCA violations would serve to meet those prerequisites, which can be determined notwithstanding any bankruptcy proceedings or discharge. *See Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 180 (7th Cir.1994) ("Permitting a suit to obtain a declaration of liability against a debtor is not equivalent to authorizing the recovery of a barred claim in a bankruptcy proceeding."); *Fernstrom*, 938 F.2d at 736 ("debtors-defendants suffer little prejudice when they are sued by plaintiffs who seek nothing more than declarations of liability that can serve as a predicate for a recovery against insurers, sureties, or guarantors."). Thus, Oppenheimer's maintenance of the lawsuit against Dulac individually is not in any way affected by FST's Bankruptcy Case or the discharge resulting therefrom.

**B. There Are No "Unusual Circumstances" That Justify Extending the Automatic Stay or the Bankruptcy Discharge to Dulac.**

Dulac has failed to demonstrate the type of unusual circumstances that would allow him to take advantage of the bankruptcy discharge as a non-debtor. "The automatic stay does not apply to guarantors, sureties, insurers, partners, and other persons liable on the debt." *U.S. v. Wright*, 57 F.3d 561, 562 (7th Cir. 1995). The Seventh Circuit has recognized only two "closely related" exceptions "to the rule permitting suits against third parties[.]" *Matter of Fernstrom Storage & Van Co.*, 938 F.2d 731, 736 (7th Cir. 1991).

"The first [exception] is applicable where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" *Id.* (quoting *A.H. Robins*, 788 F.2d at 999). On its face, that is not happening here. Dulac and FST are legally distinct entities, and the assets at issue are Dulac's, not FST's. *See Fox Valley Const. Workers Fringe Benefit Funds v. Pride of Fox Masonry & Expert Restorations*, 140 F.3d 661, 666 (7th Cir. 1998) (rejecting "specious argument that the automatic stay protects [non-

debtor's] personal assets"). Ownership of the entity undergoing bankruptcy is "not enough" for this exception to apply. *Harley-Davidson*, 19-CV-155-JDP, at *2–3 (W.D. Wis. Dec. 3, 2020) (citing cases). "After all, one purpose of creating a limited liability company is to make the owners and the company legally distinct." *Id*. at *3 (citing *Kreisler v. Goldberg*, 478 F.3d 209, 213 (4th Cir. 2007)). Similarly, defendants who are executive officers of a debtor entity do not receive the benefit of the automatic stay. *Divane v. Sunstrand Elec. Co., Inc.*, No. 03-CV-5728, at *2–3 (N.D. Ill. June 14, 2004) (automatic stay did not bar action to hold debtor's president liable for debtor's debt on a default judgment, because the president "is not a debtor in the bankruptcy case").

While Dulac cites some cases where his position was espoused (none from this Circuit), in addition to the above-cited examples from this Circuit contradicting Dulac's assertions, plenty of additional examples exist from the Bankruptcy Court's judicial district, rejecting Dulac's position. *See, e.g., Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc., et al.,* 945 F. Supp. 603 (S.D.N.Y. 1996) (declining to extend stay to non-debtor who was sole shareholder, director, president, and "alter ego" of debtor corporation); *E.I. Du Pont De Nemours Co. v. Fine Arts Reprod. Co., et al.,* No. 93 Civ. 2462(KMW), 1995 WL 312505, *5 (S.D.N.Y. May 22, 1995) (declining to extend automatic stay to non-debtor who was debtor corporation's president and guarantor); *Levesque v. Kelly Communication, Inc., et al.,* 164 B.R. 29, 30 (S.D.N.Y. 1994) (declining to extend stay to non-debtor whose two debtor corporations bore his name). It is worth emphasizing further that, as FST's bankruptcy filings have made clear, <u>Dulac is not even the sole owner of FST</u>. Instead, the Amended Plan states that "Dulac owns approximately 65% of [FST's] membership interests." Dulac cannot claim that he and FST are in effect one-and-the-same where there are other owner(s) who hold approximately 35% of FST.

The second exception to the rule that non-debtors are not covered by a bankruptcy stay "operates where the pending litigation, though not brought against the debtor, would cause the debtor, the bankruptcy estate, or the reorganization plan irreparable harm." *Fernstrom*, 938 F.2d at 736. Dulac makes two contentions that may be deemed to fall under this exception. First, he states that he is the only person at FST working on the bankruptcy proceedings, and that this lawsuit distracts Dulac so as to interfere significantly with FST's ability to reorganize. Second, Dulac also purports that he is entitled to indemnification by FST.

It is true that courts in the Southern District of New York have previously considered time commitments of non-debtors to non-bankruptcy litigation as something that can detract from reorganization efforts. *See, e.g.*, *In re United Health Care Organization*, 210 B.R. 228 (S.D.N.Y. 1997) (staying actions against two non-debtor defendants where debtor corporation's successful reorganization was contingent upon the contribution of defendants' personal assets and efforts). These exceptions cannot apply, however, in situations involving joint tortfeasors or breaches of duty by the non-debtor. *Variable-Parameter*, 945 F. Supp. at 608 (noting that the exceptions in *Robins* explicitly excluded claims "where the debtor and non-debtor co-defendant are joint tortfeasors or where the non-debtor's liability rests upon his own breach of duty."); *Cano v. DPNY, Inc.*, 287 F.R.D. 251, 262 (S.D.N.Y. 2012) (same). As discussed in Section II(A), *supra*, FST and Dulac are indeed joint tortfeasors with respect to direct copyright infringement and violations of the DMCA, and Dulac is the sole defendant against whom Oppenheimer is claiming contributory and vicarious copyright infringement.

Dulac's status as a joint tortfeasor would also be sufficient to dispose of indemnification as an unusual circumstance. *See Aetna Cas. Sur. Co. v. Namrod Development Corp.*, 140 B.R. 56 (S.D.N.Y. 1992) (holding unusual circumstances do not exist where the debtor's insider is

independently liable, the right to indemnity is not absolute, and the continuation of the suit will not interfere with the bankruptcy). Dulac alleges that FST is responsible for completely indemnifying him based on FST's limited liability company agreement from 2013. Again, this is of no help to Dulac.

As Dulac has stated in Dulac's Motion, it is true that some courts outside of this Circuit have held that absolute indemnity can justify a stay. That rule does not apply here, however, because application is limited to situations where "a non-debtor defendant has a contractual right to *absolute* indemnity from the debtor." *Johnson v. Fifth Third Bank, Inc.*, 476 B.R. 493, 502 (W.D. Ky. 2012) (emphasis in original). Just because Dulac refers to the indemnity obligations from FST's operating agreement as an "absolute indemnity" does not make it so as a matter of law. For example, a non-debtor defendant argued for application of the automatic stay to litigation against him on the basis that under "Delaware corporation law and the debtor's by-laws, the debtor must indemnify [the defendants] if he was sued because he is an officer, director or agent of the debtor, and he acted in good faith and in a manner that he reasonably believed to be in the best interests of the debtor." *In re Bidermann Industries U.S.A., Inc.*, 200 B.R. 779, 784 (Bankr. S.D.N.Y. 1996). The bankruptcy court rejected that argument on the basis that "[t]he right to indemnity is not absolute, and [the non-debtor] must ultimately demonstrate his entitlement to indemnity under the criteria set forth in the statute and the by-laws." *Id*. at 784–85. The court in *Johnson v. Fifth Third Bank, Inc.* came to the same conclusion in a case where an indemnification provision applied "except to the extent of the willful misconduct or gross negligence of such indemnified party" on the basis that "[a] jury could find that the allegations contained within the Complaint, if proven true, demonstrate willful misconduct on the part of the Defendant, making indemnification inappropriate." 476 B.R. at 503.

Dulac makes indemnification by FST seem like a foregone conclusion. FST is a Delaware limited liability company. Under the Delaware Limited Liability Company Act, subject to the provisions of a limited liability company agreement, "a limited liability company may, and shall have the power to, indemnify and hold harmless any member or manager or other person from and against any and all claims and demands whatsoever." 6 Del. C. § 18-108. Even with this seemingly flexible and broad language, however, an LLC agreement cannot "limit or eliminate liability for any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing." 6 Del. C. § 18-1101(e). Dulac's indemnification claim would fail as a matter of law if any of his actions were found to have been undertaken in bad faith, and because of this qualification, FST's indemnification of Dulac would not be "absolute." *Bidermann*, 200 B.R. at 784.

The question of whether he has an indemnification right will need to be litigated, and that is a matter between Dulac and his company, FST. *See Bidermann*, 200 B.R. at 785 ("[T]he risk and uncertainty of indemnity is something he, not his victim, should have to bear."). As discussed in more detail below, the Bankruptcy Court has set specific parameters with respect to the extent to which Dulac's liabilities will be limited, and any indemnification, let alone absolute indemnification, is outside of those parameters.

### C. Dulac's Alleged Right to an Indemnity by FST Would Violate the Bankruptcy Court's Discharge Injunction.

In an irony of ironies, by insisting that he is entitled to be indemnified by FST in this case, Dulac himself is the one who would be willfully violating the Bankruptcy Court's discharge injunction in FST's Bankruptcy Case. Dulac alleges that he is entitled to absolute indemnity through FST's LLC agreement dated January 1, 2013. A holder of the right to indemnity is a creditor whose right to indemnity is dischargeable in bankruptcy. *In re Pinnacle Brands, Inc.*, 259

B.R. 46, 50-51 (Bankr. D. Del. 2001) (holding that indemnification claim based on contract executed pre-petition was a pre-petition claim); *In re Highland Group, Inc.*, 136 B.R. 475, 481 (Bankr. N.D. Ohio 1992) ("Where an indemnification agreement is entered into prior to a bankruptcy filing, such an execution gives the indemnitee a contingent prepetition claim .... [t]his is so even where the conduct giving rise to indemnification occurs postpetition"); *In re Manville Forest Products Corp.*, 209 F.3d 125, 128–29 (2d Cir. 2000) (holding that where a contract gives a right to payment that arose before the filing of the petition, it is a claim dischargeable in bankruptcy).

As discussed above, the discharge injunction prohibits "all creditors who have held, hold, or may hold Claims against the Debtor or its assets" from taking actions "against the assets of the Debtor with respect to such Claims (other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order). . ." (Amended Plan, at 18.) In turn, the Amended Plan includes the following definition:

> "Claim" means any right to payment from the Debtor and/or any or all of the Released Parties arising, or with respect to which the obligation giving rise to such right has been incurred, before the Effective Date of this Plan, and based upon, concerning, relating to, or in any manner arising from, in whole or in part, the Debtor and/or the Debtor's operations, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance arising, or with respect to which the obligation giving rise to such right has been incurred, before the Effective Date, if such breach gives rise to a right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. FOR THE AVOIDANCE OF DOUBT, "CLAIM" SHALL SPECIFICALLY AND EXPRESSLY INCLUDE ALL CLAIMS UNDER FEDERAL, STATE AND/OR LOCAL LAW OR REGULATION.[1]

---

[1] Neither the Amended Plan nor the Confirmation Order include any definition of "Released Parties."

(Amended Plan, at 11–12.) Under the above definition, Dulac's claim that he is to be indemnified by FST would qualify as a "Claim" under the Amended Plan. Accounting for that definition with the language contained in the discharge injunction, Dulac's Claim qualified as an action "brought to enforce any rights or obligations under the Plan."

The Amended Plan does not include the words "indemnity," "indemnification," or any derivatives or synonyms thereof. The Amended Plan <u>does</u> address both the limitation of liability to which someone like Dulac is entitled, as well as the compensation that Dulac is entitled to receive under the Amended Plan. Specifically, Section 6.2 of the Amended Plan states that "Dulac's compensation shall consist of $3,000 in salary in 2023, $60,000 in 2024 and $75,000 in 2025. . . . Dulac also will have an ownership and management role in [One Road Home, Inc.]." (Amended Plan, at 11.) Meanwhile, as addressed above, Section 8.5 of the Amended Plan (Limitation of Liability), as expressly amended by the Bankruptcy Court, states as follows:

> The Debtor and its members/managing member, the Debtor's Professionals and the Subchapter V Trustee shall have no liability whatsoever for any act or omission in connection with, or arising out of, the pursuit of approval of the Plan, or confirmation of the Plan, or the consummation of the Plan, or the transactions contemplated and effectuated by the Plan or the administration of the Plan or the property to be distributed under the Plan, or any other action or omission related to the administration of the Debtor's estate~~, or in contemplation of this Chapter 11 case~~, except for willful misconduct, gross negligence professional malpractice, fraud, or criminal conduct as determined by a Final Order of the Court and, in all respects will be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

(*See* Confirmation Order, at 8 (amending Section 8.5 of the Amended Plan to remove the phrase "or in contemplation of this Chapter 11 case").) Thus, the Amended Plan, as explicitly revised by the Confirmation Order, only limits Dulac's liability with respect to potential liability relating to FST's Bankruptcy Case, and not with respect to a case like this one. To the extent that Dulac initiated FST's Bankruptcy Case in contemplation of eliminating any potential liability under this

case, the Bankruptcy Court expressly rejected that Dulac would have the benefit of limited liability under the Amended Plan with respect to Oppenheimer's claims.

Consequently, whatever right to indemnification by FST that Dulac may have had prior to FST's Bankruptcy Case was eliminated through the discharge by the Bankruptcy Court. Regardless, if Dulac now seeks to enforce a purported right to indemnification, such approach would be in violation of the Bankruptcy Court's discharge injunction and the compensation and limitation of liability provisions of the Amended Plan. FST's sole obligation to Dulac is to pay him the compensation expressly owed under the Amended Plan. Dulac cannot claim that he is now entitled to some additional right that would cause FST to pay any potential liabilities incurred by Dulac as a result of this case.

## III. CONCLUSION.

Both of the Motions should be denied, and the action against Dulac should not be stayed further. As Oppenheimer and his counsel have indicated time and again, any future actions in this case will not qualify as an "action against the assets of [FST]."

Dated: August 18, 2023

Respectfully submitted,

DAVID GORDON OPPENHEIMER

By: ____/s/ Ilya G. Zlatkin_____
Ilya G. Zlatkin
ZLATKIN CANN ENTERTAINMENT
4245 North Knox Avenue
Chicago, Illinois 60641
Email: ilya@zce.law
Tel: (312) 809-8022

*Attorney for Plaintiff David Gordon Oppenheimer*