```
 1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3   DAVID G. OPPENHEIMER,           )
                                     )
 4              Plaintiff,           )
                                     )
 5          vs.                      ) No. 21 CV 2961
                                     )
 6   FIRST STEP TRADEMARKS, LLC      ) Chicago, Illinois
     and ALEXANDER C. DULAC,         ) April 26, 2023
 7              Defendants.          ) 9:04 a.m.
                                     )
 8

 9        TRANSCRIPT OF PROCEEDINGS - TELEPHONIC STATUS HEARING

10            BEFORE THE HONORABLE ANDREA R. WOOD

11
     APPEARANCES:
12
     For the Plaintiff:     ZLATKIN CANN ENTERTAINMENT
13                          BY:  MR. ILYA ZLATKIN
                            4245 North Knox Avenue
14                          Chicago, Illinois 60641
                            (312) 809-8022
15                          ilya@zce.law

16   For the Defendant:     MR. ALEXANDER C. DULAC, Pro Se
                            85 4th Avenue #7E
17                          New York, New York  10003
                            (646) 621-6269
18                          alex.dulac@gmail.com

19

20

21

22
     Court Reporter:        Brenda S. Tannehill, CSR, RMR, CRR
23                          Official Court Reporter
                            219 South Dearborn Street, Suite 2144D
24                          Chicago, Illinois 60604
                            (312) 554-8931
25                          brenda_tannehill@ilnd.uscourts.gov
```

1      (Proceedings held remotely, via telephone:)

2      THE COURT:  Good morning.  This is Judge Wood joining

3  the line.  I believe we are ready to call the first case this

4  morning, so my courtroom deputy will go ahead and do that, and

5  then we'll get appearances.

6      Laritza.

7      THE CLERK:  Calling case 21 CV 2961, Oppenheimer

8  versus First Step Trademarks, LLC, et al., for status.

9      THE COURT:  Do we have plaintiff's counsel?

10      MR. ZLATKIN:  Good morning, Your Honor.  Ilya Zlatkin

11  on behalf of plaintiff, David Oppenheimer.

12      MR. DULAC:  Good morning, Your Honor.  You have

13  Alexander Dulac representing pro se in the case.

14      THE COURT:  Thank you.

15      Mr. Dulac, are you planning to have counsel appear on

16  behalf of the LLC?

17      MR. DULAC:  No, not yet.

18      THE COURT:  So, generally speaking, unless you are a

19  lawyer, you cannot appear on behalf of the LLC.  So I see that

20  you've filed a motion on behalf of the LLC.  Are you a lawyer?

21      MR. DULAC:  I'm not a lawyer.

22      THE COURT:  Okay.  So even though you can appear on

23  behalf of yourself pro se, the general rule is that for an

24  entity -- and an LLC is organized as an entity -- it would

25  need to have counsel in order to defend the case.

1           So I'm going to mention that, and then I'm going to

2    turn to Mr. Zlatkin for a moment because one of the points

3    made in the motion that was filed on behalf of the LLC is that

4    as a result of the bankruptcy, the plaintiff is not able to

5    pursue any claims against the LLC here.  Is that true?

6           MR. ZLATKIN:  Your Honor, this is Ilya Zlatkin.

7           That's certainly what Mr. Dulac has filed.  It's also

8    what his bankruptcy counsel, or rather, I should say, First

9    Trademarks' bankruptcy counsel has been corresponding to me.

10           Our position is that we're in compliance with the

11    bankruptcy court's order and injunction in that we are no

12    longer interested in pursuing the assets of First Step

13    Trademarks; however, there's a difference between pursuing

14    their assets versus keeping the company in the case because

15    we'd be seeking declaratory judgment with respect to First

16    Step Trademarks about their potential infringement because

17    that is an element of our claims against Mr. Dulac.

18           There's also injunctive relief available to

19    Mr. Oppenheimer; and so, you know, from our perspective, that

20    is not an action against the assets of the now-discharged

21    entity.

22           THE COURT:  So you are continuing to seek relief in

23    the form of a permanent injunction; is that correct?

24           MR. ZLATKIN:  Yes.

25           THE COURT:  I don't see in your complaint any request

1  for declaratory judgment.  Did you ask for that in your

2  complaint?

3          MR. ZLATKIN:  Not in the complaint, Your Honor.

4          THE COURT:  Did you ask for it someplace else other

5  than this morning?

6          MR. ZLATKIN:  No, Your Honor, not yet.  The discharge

7  of the entity is a relatively new thing in this litigation,

8  and the injunctive relief has been asked for in the complaint.

9          In effect, the declaratory judgment that I mention

10 right now isn't necessarily something that truly needs to be a

11 declaratory judgment.  What I mean is just it's an element of

12 the case and that it's not an action against First Steps

13 Trademarks' assets.

14         THE COURT:  So I think my question is why there is a

15 need to keep the LLC defendant in the case if you are not able

16 to pursue damages or other monetary relief or any relief that

17 would implicate the assets of that entity.

18         MR. ZLATKIN:  Sure, Your Honor.  Two reasons from my

19 perspective.  The first is the permanent injunction because,

20 you know, just because the entity has potentially stopped

21 using the copyright -- infringing -- excuse me --

22 Mr. Oppenheimer's copyright right now doesn't mean that they

23 wouldn't start again.  And, in addition, there's a pending

24 motion to dismiss this case for lack of personal jurisdiction.

25         And our claim with respect to

1    Mr. Oppenheimer -- excuse me -- with respect to Mr. Dulac and
2    why there's jurisdiction over him relates directly to First
3    Step Trademarks, jurisdiction over First Step Trademarks.  So
4    that is, I would say, the primary reason for keeping First
5    Step Trademarks in this case.
6             THE COURT:  Okay.  Here's what I'm going to do.  As I
7    said, the LLC cannot represent itself pro se, and Mr. Dulac
8    cannot represent the LLC because he is not a lawyer.  So I
9    can't really accept the motion to dismiss that was filed by
10   Mr. Dulac on behalf of the LLC; however, I can, in the
11   administration of sort of judicial interest here, take notice
12   of public filings in other cases in litigation.  And in this
13   case, there is a public bankruptcy proceeding with a plan of
14   reorganization that was confirmed by order of the bankruptcy
15   court.  So there is an order confirming the plan of
16   reorganization that has certain requirements.
17            I have not, admittedly, had an opportunity to go
18   through in detail to determine whether I think that the plan
19   of reorganization for the LLC leaves room for the claims that
20   are being asserted in this case to continue to be asserted
21   against the entity.
22            So as an initial matter, I am going to take a look at
23   the bankruptcy docket, including the plan of reorganization
24   and the order confirming it, to make a determination of
25   whether there is room for this case to proceed consistent with

1   the bankruptcy proceedings.

2        If there is room, then the LLC will either have to

3   get an attorney to represent it or risk being defaulted

4   because Mr. Dulac cannot represent the LLC himself.

5        In the meantime, I will proceed to rule on the motion

6   to dismiss for lack of personal jurisdiction that was filed on

7   behalf of Mr. Dulac.  And the parties will continue with your

8   discovery proceedings in front of Magistrate Judge Gilbert.

9        MR. DULAC:  Judge, can I ask you a question?

10       THE COURT:  Go ahead, Mr. Dulac.

11       MR. DULAC:  So one thing.  Ilya last week sent over a

12  document tied to the personal jurisdiction with regards to me

13  that basically before hiring Ilya, Oppenheimer had hired a

14  New York attorney to threaten suit against the company.  So

15  that's a really material document that Ilya sent on Friday or

16  Thursday last week.

17       THE COURT:  Why is that material?

18       MR. DULAC:  Because it basically says that

19  Oppenheimer thought that he should sue the company in New York

20  first before going to Chicago.  And so, I mean, to me, when I

21  saw that, I couldn't write that in a book, you know.  He

22  literally, before he hired Ilya, got a New York lawyer who

23  could only practice in New York to sue the company.  This is a

24  year before the suit.  And so it's very material in, you know,

25  what he believed is the right situation and that it should

1    have been tried in New York, never tried against me in

2    Chicago.

3            THE COURT:  Well, two things, Mr. Dulac.  One, the

4    fact that there might be personal jurisdiction in the State of

5    New York doesn't mean that there's not also personal

6    jurisdiction in Illinois.  It's quite possible for different

7    jurisdictions to have the ability to hear a case for personal

8    jurisdiction.

9            There's an issue of venue which is a different issue,

10   but it's not clear to me that there's any relevance to the

11   letter based on your description of it.  If it is something

12   that you do think is relevant, what you would need to do is

13   ask for leave to supplement the briefing on your motion to

14   dismiss for lack of personal jurisdiction in order to add that

15   as an exhibit.

16           Is that what you were seeking to do?

17           MR. DULAC:  Yeah, I appreciate that.  Yes, that's

18   what I'd like to do, based on what you said, yes.

19           THE COURT:  And when did you receive this letter?

20           MR. DULAC:  Thursday or Friday of last week.

21           THE COURT:  So this is something that you've received

22   since you filed your motion, and you believe that it is

23   material to your argument for lack of permanent jurisdiction?

24           MR. DULAC:  Absolutely, absolutely.

25           THE COURT:  And did you receive this in discovery or

1    some other way?

2            MR. DULAC:  In discovery.

3            THE COURT:  Here's what I will allow you to do.  I

4    will give you one week, until May 3rd, to supplement your

5    motion.  You may file a short brief of no more than five

6    pages.  And you may file this document as an additional

7    exhibit.  Your short brief of no more than five pages which is

8    a supplement to your motion to dismiss can explain why you

9    think this letter is relevant.

10           Will you be able to do that by May 3rd?

11           MR. DULAC:  I'll make it happen.

12           THE COURT:  Okay.  And then since this is new

13   information, I will give the plaintiff an opportunity to

14   respond to the supplemental submission.

15           Mr. Zlatkin, would you be able to file a response to

16   the supplement by May 10th, again, no more than five pages?

17           MR. ZLATKIN:  Yes, Your Honor.

18           THE COURT:  And I take it you know what letter he's

19   referring to?

20           MR. ZLATKIN:  Yes, Your Honor.  And it's worth noting

21   that while this letter was not included as an exhibit to the

22   complaint, it was referenced in the complaint.

23           THE COURT:  But do you have any reason to believe

24   that Mr. Dulac had a copy of the letter at the time that you

25   filed the complaint?

1          MR. ZLATKIN:  My reason to believe that is that this

2  letter was sent to First Step Trademarks and that he is the

3  CEO of First Step Trademarks.  So, you know, this particular

4  letter establishes the fact that the defendants had notice of

5  copyright infringement and didn't remove the photograph prior

6  to us filing suit.  So that is the context within which it's

7  referenced in the complaint; but I believe they had a copy of

8  it at least certainly as far as what Mr. Oppenheimer and his

9  counsel could have possibly done for them to have received it.

10          THE COURT:  Mr. Dulac, did you receive a copy of the

11  letter prior to the filing of the complaint here?

12          MR. DULAC:  No, nothing that I can recall.  It was

13  sent to, like, some secondary email on the site, and I don't

14  recall seeing that ever before.

15          MR. ZLATKIN:  Your Honor, if I may add, is it okay?

16  This is Ilya Zlatkin.  Is it okay to just mention one more

17  thing about that letter?

18          THE COURT:  Yes, but keep it brief because there's

19  going to be briefing.

20          MR. ZLATKIN:  The letter had been sent not just

21  via -- excuse me.  It had been sent to the only address that

22  was available and that was listed in the terms and conditions

23  of theplunge.com -- that's the website that's at issue here --

24  for DMCA purposes.  That's the address that's listed on the

25  website because that's the address that was listed.

1    MR. DULAC:  And it was sent a month into COVID in

2    New York if there's any address.  That's when it might have

3    sent, when mailrooms were closed, but anyway.

4    MR. ZLATKIN:  It was email.

5    THE COURT:  I don't know that the substance of the

6    letter will actually turn out to be material to anything, but

7    I don't see any reason not to allow Mr. Dulac to include it in

8    the record.  And we'll see if this is something that should

9    have been raised earlier.

10   I'm going to give him at least a little bit of grace

11   on this, given that he is pro se and I don't have any

12   particular reason to challenge his representation that he

13   didn't see this until it was provided in discovery.  So I'm

14   going to allow the additional briefing.

15   I can't tell definitively from the description of the

16   letter whether it will actually have any bearing on the

17   personal jurisdiction issue, but the motion is still pending,

18   and the additional two weeks to get that issue briefed is not

19   going to delay the ruling materially.

20   As I said, in the meantime, I know the parties are in

21   front of the magistrate for certain things.  It looks like you

22   have a joint status report due to Judge Gilbert at the

23   beginning of June.

24   For my purposes, I'm going to set a telephone status

25   hearing for about 60 days from now, so towards the end of

1    June.  Depending on my ruling and what happens with your

2    discovery, we may or may not need that status hearing, but I'm

3    going to go ahead and put one on the calendar.

4         And as I said, even though I am treating the LLC as

5    being unrepresented in this case, I do think it's appropriate

6    for me to consider sort of sua sponte, if you will, the

7    bankruptcy proceedings to ensure that the fact that the LLC is

8    not represented doesn't allow the plaintiff to act in

9    contravention of the bankruptcy court's orders.

10        I'm going to ask my courtroom deputy now to provide a

11   date and time at the end of June for a telephonic status

12   hearing.

13        Laritza.

14        THE CLERK:  Yes, Judge.  We can do June 27th at

15   9:00 a.m.

16        MR. DULAC:  That works for me.  Alexander Dulac.

17        MR. ZLATKIN:  I'm so sorry.  Could you repeat the

18   date?

19        THE CLERK:  June 27th at 9:00 a.m.

20        MR. ZLATKIN:  Great.  Thank you.

21        THE COURT:  Thank you for answering my questions this

22   morning.  Is there anything else for today?

23        MR. ZLATKIN:  I do have a question relating to

24   discovery, Your Honor.  This is Ilya Zlatkin.  Is that

25   something I can direct to you?

1       THE COURT:  It depends on what the question is.  I

2   did refer discovery to the magistrate judge, so I'm not going

3   to make any rulings on particular issues, but I'll hear what

4   your question is and let you know if it's something that has

5   to go to Judge Gilbert.

6       MR. ZLATKIN:  Understood.

7       Docket 43, which is Judge Gilbert's most recent

8   order, had set a deadline for issuing written discovery of

9   this past Monday, the 24th.

10      Mr. Dulac served us with his written discovery

11  requests yesterday, on the 25th; and as you can imagine, I

12  am -- I would need to know whether we need to actually respond

13  to his requests substantively, given that they were after the

14  deadline and Judge Gilbert's order is explicit about parties

15  having the 24th as a deadline.

16      THE COURT:  This is an issue for Judge Gilbert.  It's

17  his order, so it is up to him to decide whether to give any

18  allowances.

19      MR. ZLATKIN:  Understood.  Thank you, Your Honor.

20      THE COURT:  Okay.  Thank you, Mr. Zlatkin.  Thank

21  you, Mr. Dulac.  Have a good day.

22      (Proceedings adjourned at 9:24 a.m.)

23                                  *  *  *  *  *

24

25

1                     C E R T I F I C A T E

2

3         I, Brenda S. Tannehill, certify that the foregoing is

4  a complete, true, and accurate transcript from the record of

5  proceedings on April 26, 2023, before the HON. ANDREA R. WOOD

6  in the above-entitled matter.

7

8

9  */s/Brenda S. Tannehill, CSR, RMR, CRR*          7/28/2023

10     Official Court Reporter               Date
       United States District Court
11     Northern District of Illinois
       Eastern Division

12

13

14

15

16

17

18

19

20

21

22

23

24

25